**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | No. 1:17-cv-03688 |
| Plaintiff, | ) | |
| v. | ) | Judge: Hon. John Robert Blakey |
| | ) | |
| HARPERCOLLINS PUBLISHERS LLC and | ) | Magistrate Judge: Hon. Sheila |
| LAURA KIPNIS, | ) | Finnegan |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ANSWER OF DEFENDANT HARPERCOLLINS PUBLISHERS LLC

Defendant HarperCollins Publishers LLC ("HarperCollins"), by and through the undersigned counsel, hereby answers the Complaint in the above-captioned action as follows, preserving the same headings and paragraph numbering used by Plaintiff:

**I.  INTRODUCTION**

1.      In April of 2017, HARPERCOLLINS PUBLISHERS LLC published a book written by Northwestern University professor LAURA KIPNIS entitled *Unwanted Advances: Sexual Paranoia Comes to Campus.* The book has received wide-spread national media attention, including front page coverage in *The New York Times* and in other national publications.

**ANSWER:**      HarperCollins admits that in April 2017 it published a book by Northwestern University professor Laura Kipnis ("Kipnis") entitled *Unwanted Advances: Sexual Paranoia Comes to Campus* ("Book") that received national media attention, including coverage in *The New York Times* and in other national publications.  HarperCollins otherwise denies each and every remaining allegation in paragraph 1 of the Complaint.

2.     In the book, which critiques the Title IX processes under which colleges investigate sexual discrimination complaints, KIPNIS gives significant prominence to sexual assault and sexual harassment allegations made by two Northwestern students against her friend and colleague-former Northwestern philosophy professor, Peter Ludlow. In defending Ludlow and attempting to (falsely) reframe him as the victim of malicious female students and a Title IX process run amok, KIPNIS gratuitously discloses private and embarrassing details about the personal life of Plaintiff, a current Northwestern graduate student. KIPNIS writes about and publicizes private text messages and information about Plaintiff obtained from Ludlow and contained in confidential Northwestern records. Many of these text messages were taken out of context, none of them were fact-checked with Plaintiff, and all of them were private communications that Plaintiff never intended to be publicized for the world to read.

**ANSWER:**  HarperCollins respectfully refers the Court to the Book for its true content and meaning and admits that the Book explores the Title IX processes under which colleges investigate sexual discrimination complaints and discusses Title IX complaints brought by two Northwestern University students against former Northwestern University professor Peter Ludlow ("Ludlow") and the ensuing investigations conducted by Northwestern University. HarperCollins otherwise denies each and every remaining allegation in paragraph 2 of the Complaint.

3.     In addition to disclosing private details about the Plaintiff's personal life, KIPNIS made and HARPERCOLLINS published false and damaging statements about Plaintiff and presented her in a false light as lying, manipulative, and litigious, despite having reason to know that this portrayal was false. Defendants made multiple misrepresentations of fact about Plaintiff, including misrepresenting the nature of Plaintiff's relationship with Ludlow and misrepresenting

a number of facts about Plaintiff-including falsely claiming that she had initiated sexual harassment charges against a male student and that she had made up an allegation of rape against Ludlow.

**ANSWER:**  HarperCollins respectfully refers the Court to the Book for its true content and meaning and denies each and every allegation in paragraph 3 of the Complaint.

4.     Defendants recklessly pursued fame and profit without regard for the harm their actions would cause to Plaintiff, a young and promising graduate student who -- rather than being on a mission to end Ludlow's career (as Kipnis suggests) -- in fact only very reluctantly came forward to disclose his conduct after she learned of other allegations of inappropriate sexual conduct with students. Now, as a result of Defendants' misrepresentations about Plaintiff and the disclosure of private and embarrassing personal facts about her life, her personal life and professional career prospects have been upended and her reputation has been significantly harmed.

**ANSWER:**  HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegation that Plaintiff's life, personal life, and professional career prospects have been upended, and on that basis denies that allegation.  HarperCollins denies each and every remaining allegation in paragraph 4 of the Complaint.

## II.    JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1332, because the parties are citizens of different states, and the amount in controversy exceeds $75,000.  Specifically, Plaintiff is an individual who is domiciled in Illinois.  Defendant HARPERCOLLINS PUBLISHERS LLC is a Delaware limited liability company based in New York City.  Defendant LAURA KIPNIS is an individual who is domiciled in New York.

**ANSWER:** HarperCollins admits the allegations in paragraph 5 of the Complaint.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this district.

**ANSWER:** HarperCollins admits the allegations in paragraph 6 of the Complaint.

### III.    PARTIES

7.      Plaintiff JANE DOE is a graduate student in what should be her final year of a PhD program in Northwestern University's Department of Philosophy.  Prior to the publication of *Unwanted Advances*, which contains multiple false statements about Plaintiff and discloses private facts regarding Plaintiff's life, Plaintiff had a promising career in the field of Philosophy. She planned to seek a job in academia this fall.

**ANSWER:** HarperCollins admits that Plaintiff is a graduate student in Northwestern University's Department of Philosophy.   HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations that Plaintiff should be in her final year of her PhD program, had a promising career in the field of philosophy, and planned to seek a job in academia, and on that basis denies those allegations.  HarperCollins denies each and every remaining allegation in paragraph 7 of the Complaint.

8.      Defendant HARPERCOLLINS PUBLISHERS LLC is a company that publishes books.  HARPERCOLLINS is based in New York and published *Unwanted Advances*.

**ANSWER:** HarperCollins admits the allegations in paragraph 8 of the Complaint.

9.      Defendant LAURA KIPNIS is a Professor at Northwestern University's School of Communication.  Her research and writing focus on gender issues and cultural criticism.

**ANSWER:** HarperCollins admits the allegations in paragraph 9 of the Complaint.

4

IV.     FACTUAL ALLEGATIONS

**Peter Ludlow Pursues an Inappropriate Romantic Relationship with Jane Doe, a PhD Student in His Department**

10.     In or about 2011, Plaintiff applied to a PhD program in philosophy at Northwestern University, one of the top philosophy programs in the country.

**ANSWER:**  HarperCollins admits that Plaintiff applied to a PhD program in philosophy at Northwestern University.  HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 10 of the Complaint, and on that basis denies each and every remaining allegation therein.

11.     After she applied, Plaintiff attended a recruitment weekend for prospective graduate students.  Plaintiff was one of only a handful of female graduate students that the department was recruiting that year, as the field of philosophy, and Northwestern's philosophy department in particular, is male-dominated.

**ANSWER:**  HarperCollins admits that Plaintiff attended a recruitment weekend for prospective graduate students.  HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 11 of the Complaint, and on that basis denies each and every remaining allegation therein.

12.     During the weekend, a social gathering for the prospective students was held at the home of Peter Ludlow, a nationally prominent philosopher and at the time a professor in the Department.

**ANSWER:**  Upon information and belief, HarperCollins admits that Ludlow was a professor in the Northwestern University Department of Philosophy in or about 2011. HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth

of the allegations in paragraph 12 of the Complaint, and on that basis denies each and every remaining allegation therein.

13.     At the gathering, Ludlow (who was in his fifties) spoke extensively and virtually exclusively to Plaintiff, a 24-year-old whom he had just met earlier in the day.  He expressed interest in Plaintiff's intellect and area of academic interest and was singularly focused on Plaintiff.

**ANSWER**:  HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13 of the Complaint, and on that basis denies each and every allegation therein.

14.     During the recruitment party, Ludlow took Plaintiff into his bedroom.  He printed out and gave her copies of unpublished papers he was working on.  He told Plaintiff that she "had to come to Northwestern" and that she "had to work with him."  He also told her:  "I want you to tell me everything you want," and then suggested that he could get her invited to a prestigious philosophy conference in Scotland that summer.

**ANSWER**:  HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 14 of the Complaint, and on that basis denies each and every allegation therein.

15.     As Ludlow was a leader in his field, Plaintiff was extremely flattered by his interest and desire to mentor her.  He was a decisive factor in her choosing Northwestern for her graduate studies.

**ANSWER**:  HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 15 of the Complaint, and on that basis denies each and every allegation therein

16.     However, when Ludlow followed up with an email invitation to spend the summer in Scotland with him, at a house he was renting, and with a plane ticket he would pay for, Plaintiff began to feel uneasy-particularly because he asked her not to tell others about his offer.

**ANSWER:**  HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16 of the Complaint, and on that basis denies each and every allegation therein.

17.     Plaintiff reached out to a female faculty member in the philosophy department to let her know what had occurred.  That professor informed the chair of Northwestern's philosophy department about Ludlow's conduct.

**ANSWER:**  Upon information and belief, HarperCollins admits that Plaintiff reached out to a female faculty member in the philosophy department to let her know what had occurred. HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 17 of the Complaint, and on that basis denies each and every remaining allegation therein.

18.     Plaintiff subsequently turned down the offer to travel to Scotland with Ludlow.

**ANSWER:**  Upon information and belief, HarperCollins admits the allegations in paragraph 18 of the Complaint to the extent Plaintiff declined the offer to travel to Scotland to conduct research but denies the characterization of the trip as an offer to travel "with Ludlow."

19.     In fall 2011, Plaintiff began graduate studies at Northwestern.

**ANSWER:**  Upon information and belief, HarperCollins admits the allegations in paragraph 19 of the Complaint.

20.     During the first semester, she enrolled in a seminar with Professor Lackey, the professor in whom she had confided Ludlow's overtures. When Ludlow learned this, he decided to attend the seminar as well. It was unclear at the time why he was attending, but he participated fully in the class. Plaintiff took it as indicative of the intellectual rigor of the Northwestern faculty that they sat in on each other's classes. Later, she came to believe that Ludlow enrolled in the course primarily as a way to get close to her and interact with her.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 20 of the Complaint, and on that basis denies each and every allegation therein.

21.     Initially, Plaintiff and the other students enjoyed the opportunity to have two faculty members participating in the seminar discussions. Plaintiff also initially appreciated that she was becoming the subject of Ludlow's intellectual focus. He invited her to co-author a paper with him. He began inviting her and another student out for meals. He began communicating with her on a daily basis about her research and shared intellectual ideas. As Plaintiff was also attending a class taught by Ludlow, he quickly made himself a central and daily focus of her first several months at Northwestern.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 21 of the Complaint, and on that basis denies each and every allegation therein.

22.     Initially, Plaintiff found the attention and interest intellectually stimulating. Moreover, she was alone and new to Evanston without friends or family support. Ludlow inserted himself into Plaintiff's life and came to dominate her time.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 22 of the Complaint, and on that basis denies each and every allegation therein.

23. He began taking her to meals alone, asking her to spend time with him alone, and inviting her to his apartment in the city. He began confiding in Plaintiff about his romantic life, talking incessantly about the many much younger women he was dating. He treated Plaintiff as a confidante and asked her advice about his dating life. (At one point, he told her "don't worry, you're too old for me.")

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 23 of the Complaint, and on that basis denies each and every allegation therein.

24. It became clear to Plaintiff that Ludlow was lonely. She felt flattered and needed by him. Also, he was prominent in his field, a brilliant philosopher, and someone who would evaluate her progress as a graduate student.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 24 of the Complaint, and on that basis denies each and every allegation therein.

25. Sometime in late October or early November 2011, Ludlow kissed Plaintiff. He told her: "Well I guess you'll have to decide what kind of relationship we have." During that same period, he routinely acknowledged to Plaintiff that he could get in trouble for his behavior if anyone found out.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 25 of the Complaint, and on that basis denies each and every allegation therein.

26. Plaintiff did not reciprocate the kiss, and reminded Ludlow that she had a long-term boyfriend (who was living in Boston at the time).

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 26 of the Complaint, and on that basis denies each and every allegation therein.

27. From mid-October through December 2011, Ludlow was insistent in his efforts to persuade Plaintiff to have a romantic, sexual relationship with him. Plaintiff was increasingly unsure of how to handle this pressure. She wanted to stave off any romantic relationship while maintaining the academic and intellectual relationship with her mentor, who was teaching one of the classes she was attending, writing an academic paper with her, and would have a role in her career and evaluating her progress towards her PhD.

**ANSWER:** Upon information and belief, HarperCollins admits that Plaintiff had a romantic relationship with Ludlow and told him she loved him. HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 27 of the Complaint, and on that basis denies each and every remaining allegation therein.

28. By this point, Plaintiff had become isolated from her colleagues in the graduate program. Ludlow exerted more and more control over her-one time yelling at her and driving erratically with her in the car when she told him that she was going to switch paper topics. "We. Had. A. PLAN!" he yelled at her. Plaintiff began to have serious concerns about the power he

exerted over her as well as her growing dependency and inability to get out from under his control.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 28 of the Complaint, and on that basis denies each and every allegation therein.

29. At the same time, Ludlow continued to pressure Plaintiff into a sexual relationship. Although she made a series of compromises in terms of allowing some physical intimacy, she made clear that she would not have sex with him.

**ANSWER:** Upon information and belief, HarperCollins denies that Plaintiff made clear she would not have sex with Ludlow. HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 29 of the Complaint, and on that basis denies each and every remaining allegation therein.

30. Ludlow was not happy about this and complained that Plaintiff was not paying adequate attention to him. In mid-November, when Plaintiff's boyfriend came to campus from out of town, Ludlow engaged in a series of angry and jealous interactions with Plaintiff about him.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 30 of the Complaint, and on that basis denies each and every allegation therein.

31. Then, shortly after the visit from her boyfriend, Ludlow had drinks with Plaintiff. She became intoxicated. When she awoke the next morning, she was in Ludlow's apartment, unclothed, and in his bed. It was clear that he had had sexual intercourse with her at some point during the night, but Plaintiff had no memory of what had happened.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 31 of the Complaint, and on that basis denies each and every allegation therein.

32. Plaintiff was extremely upset. But as she was still a student in his department and they were working on a joint academic paper together, Plaintiff tried to maintain a sense of normalcy. She felt love for Ludlow as a mentor and had grown emotionally intimate with him, and his injection of physical intimacy was confusing and upsetting to Plaintiff. Increasingly uneasy about the relationship, Plaintiff departed campus as soon as possible for the holiday break. Once she was out of Evanston and away from Ludlow, it became clear to her how inappropriate the relationship was and that she had to end all personal contact with him.

**ANSWER:** Upon information and belief, HarperCollins admits that Plaintiff was a student in Ludlow's department. HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 32 of the Complaint, and on that basis denies each and every remaining allegation therein.

33. On or around January 6, 2012, Plaintiff returned after a month away, and Ludlow met her at the airport. While on the taxi ride home, Plaintiff told him that she felt he had taken advantage of her and had manipulated her and that she couldn't have any sort of personal relationship with him. He became upset.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 33 of the Complaint, and on that basis denies each and every allegation therein.

34. Plaintiff eventually told Ludlow that she was no longer able to work on the paper they were co-authoring.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 34 of the Complaint, and on that basis denies each and every allegation therein.

35. Plaintiff subsequently took an incomplete in a Philosophy of Language course. She simply could not take courses in Ludlow's area of focus because of the intense emotional strain resulting from what she had experienced. She also eventually failed to meet every single fourth year goal for the program.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 35 of the Complaint, and on that basis denies each and every allegation therein.

**After Much Deliberation, Jane Doe Reluctantly Files a Complaint against Ludlow**

36. On or about February 28, 2012, the philosophy department was contacted by Northwestern's Title IX coordinator regarding a sexual misconduct complaint filed by a first year undergraduate student against Ludlow. The Title IX coordinator asked whether there was anyone else who she should speak to. The faculty member who spoke to the Title IX office offered Plaintiff's name-noting that Ludlow had seemed particularly close to the Plaintiff.

**ANSWER:** Upon information and belief, HarperCollins admits the allegations in paragraph 36 of the Complaint.

37. On or about February 29, 2012, Plaintiff met with the Title IX coordinator. The Title IX coordinator asked Plaintiff to go on record about her experiences with Ludlow, but Plaintiff expressed fear and reluctance to do so given Ludlow's position in the academic community and in the department where she was being evaluated for her PhD.

**ANSWER:** Upon information and belief, HarperCollins admits that in February 2012 Plaintiff met with the Title IX coordinator and the Title IX coordinator asked Plaintiff to go on record about her experience with Ludlow but Plaintiff declined to do so. HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 37 of the Complaint, and on that basis denies each and every remaining allegation therein.

38. On or around March 14, 2012, the Title IX office emailed Plaintiff, again urging her to go on record with the details of what had happened with Ludlow. Plaintiff once again refused to come forward, fearing retaliation and negative effects on her career.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 38 of the Complaint, and on that basis denies each and every allegation therein.

39. Northwestern proceeded to investigate the undergraduate's complaint without Plaintiff's input, and Ludlow was eventually disciplined.

**ANSWER:** Upon information and belief, HarperCollins admits that Northwestern University investigated a Title IX complaint brought by an undergraduate student against Ludlow and that Ludlow was disciplined by Northwestern University. HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 39 of the Complaint, and on that basis denies each and every remaining allegation therein.

40. For the next academic year, Plaintiff worked on her graduate work, but had a difficult time. She was not able to focus, and was depressed; many days she was unable to get

out of bed. She had been unable to confide in anyone about the details of what had happened with Ludlow, including the unconsented sexual intercourse.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 40 of the Complaint, and on that basis denies each and every allegation therein.

41. In February of 2014, the undergraduate student who had accused Ludlow of sexual misconduct sued Northwestern for Title IX violations. Her allegations of sex harassment and sexual assault by Ludlow became public.

**ANSWER:** Upon information and belief, HarperCollins admits the allegations in paragraph 41 of the Complaint.

42. At the time that the news of the undergraduate's lawsuit became known publicly, Plaintiff was attending an academic conference in Bogota, Colombia. The female faculty member whom she had previously confided in regarding Ludlow's invitation to Scotland was there, too, and noticed that Plaintiff looked upset. She asked if everything was ok. Plaintiff disclosed what had occurred with Ludlow.

**ANSWER:** Upon information and belief, HarperCollins admits that at the time the news of the undergraduate's lawsuit became known publicly, Plaintiff was attending an academic conference, the female faculty member with whom she had previously spoken about Ludlow was also at the conference, and Plaintiff and the faculty member discussed Ludlow while at the conference. HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 42 of the Complaint paragraph, and on that basis denies each and every remaining allegation therein.

43. Plaintiff did not share with the faculty member the incident of non-consensual sex, which was very upsetting for Plaintiff to discuss.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 43 of the Complaint, and on that basis denies each and every allegation therein.

44. After Plaintiff returned from Colombia, the faculty member informed Plaintiff that she was obliged to report what Plaintiff had told her to Northwestern.

**ANSWER:** HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 44 of the Complaint, and on that basis denies each and every allegation therein.

45. Plaintiff expressed concern about reporting to Northwestern administration what had occurred. She also disclosed at that point that Ludlow had engaged in unconsented sex with her.

**ANSWER:** Upon information and belief, HarperCollins admits that Plaintiff told the faculty member about the purported incident of nonconsensual sex sometime after the academic conference. HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 45 of the Complaint, and on that basis denies each and every remaining allegation therein.

46. In or around February 2014, the faculty member contacted Northwestern's Title IX office regarding Plaintiff's disclosures, prompting the Title IX office to email Plaintiff. Plaintiff expressed that she still was afraid to speak with anyone at Northwestern about what had occurred because Ludlow was powerful and well-known, and it would ruin her career academically to come forward.

**ANSWER:** Upon information and belief, HarperCollins admits that in or around February 2014, the faculty member contacted Northwestern's Title IX office regarding Plaintiff's disclosures, prompting the Title IX office to email Plaintiff, and Plaintiff expressed that she still was afraid to speak with anyone at Northwestern because Ludlow was powerful. HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 46 of the Complaint, and on that basis denies each and every remaining allegation therein.

47. Eventually, however, in light of the allegations by the undergraduate student and additional information that Plaintiff learned about involving Ludlow's alleged misconduct with another student, Plaintiff became convinced that the right thing to do was to come forward. Plaintiff at that point agreed to make a complaint.

**ANSWER:** HarperCollins admits that Plaintiff agreed to speak with Northwestern University. HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 47 of the Complaint, and on that basis denies each and every remaining allegation therein.

48. Northwestern hired an outside investigator to investigate Plaintiff's allegations against Ludlow. In her report, the investigator expressed that Plaintiff was extremely credible, noting that she had agreed to cooperate and go on the record despite great personal risk.

**ANSWER:** HarperCollins admits the allegations in paragraph 48 of the Complaint. For the avoidance of doubt, with respect to the allegations that the investigator expressed Plaintiff was extremely credible and agreed to cooperate despite great personal risk, HarperCollins admits those allegations only to the extent that the investigator expressed that as her opinion but does not admit the underlying truth of what was expressed.

49.   The investigator ultimately concluded that Ludlow had engaged in sexual harassment towards Plaintiff, but found that she did not have enough evidence to determine whether or not a sexual assault had occurred.

**ANSWER:**   Upon information and belief, HarperCollins admits the allegations in paragraph 49 of the Complaint.

50.   Northwestern commenced a termination hearing against Ludlow.  In the midst of that termination hearing, Ludlow resigned from the Northwestern faculty.

**ANSWER:**   Upon information and belief, HarperCollins admits the allegations in paragraph 50 of the Complaint.

**Laura Kipnis Writes About The Allegations Against Ludlow and Jane Doe Files a Retaliation Complaint Against Kipnis**

51.   Following the dismissal of Ludlow's lawsuit, in or around February 2015, Defendant LAURA KIPNIS wrote and caused to be published in *The Chronicle of Higher Education* an article entitled "Sexual Paranoia Strikes Academe."  In the article, which primarily addressed KIPNIS's opinion that professors should be allowed to date students, KIPNIS included references to Ludlow's Title IX proceeding.  Thereafter, two Northwestern students, including Plaintiff, filed Title IX complaints against KIPNIS.

**ANSWER:** HarperCollins admits that Kipnis wrote and caused to be published an article entitled "Sexual Paranoia Strikes Academe" in *The Chronicle of Higher Education*, which referenced Ludlow's Title IX proceeding and expressed Kipnis's opinions, and that two Northwestern students, including Plaintiff, filed Title IX complaints against Kipnis thereafter. HarperCollins otherwise denies each and every remaining allegation in paragraph 51 of the Complaint.

52.     The basis of the Title IX complaints against KIPNIS was that she had misrepresented certain facts about the Plaintiff's complaint and suggested that the complaint brought against Ludlow (one of her colleagues) lacked merit.

**ANSWER:**  Upon information and belief, HarperCollins admits that Plaintiff filed a Title IX complaint against Kipnis—found to be meritless—and denies each and every remaining allegation in paragraph 52 of the Complaint.

53.     On or about May 29, 2015, KIPNIS caused to be published in *The Chronicle of Higher Education* a second article entitled "My Title IX Inquisition."  In the article, KIPNIS expressed outrage at being the subject of Title IX complaints.

**ANSWER:**  HarperCollins admits that on or about May 29, 2015, Kipnis caused to be published in *The Chronicle of Higher Education* a second article entitled, "My Title IX Inquisition."  HarperCollins otherwise denies each and every remaining allegation in paragraph 53 of the Complaint.

**Kipnis Retaliates Against Plaintiff by Writing *Unwanted Advances*, Grossly Mischaracterizing the Relationship between Plaintiff and Ludlow and Making False and Damaging Statements About Plaintiff**

54.     On or about April 4, 2017, Defendant HARPERCOLLINS PUBLISHERS LLC released a book written by Defendant LAURA KIPNIS, titled *Unwanted Advances*:  Sexual Paranoia Comes to Campus.  *Unwanted Advances* generally describes how modern college campuses implement Title IX and criticizes procedures that KIPNIS deems unfair to people accused of sexual assault.

**ANSWER:**  HarperCollins respectfully refers the Court to the Book for its true content and meaning and admits the allegations in paragraph 54 of the Complaint.

55.     Plaintiff takes no issue with Defendant LAURA KIPNIS's choice to write on this topic.   Likewise, Plaintiff does not object to Defendant HARPERCOLLINS PUBLISHERS LLC's choice to publish a book that explores these issues.

**ANSWER:**   HarperCollins denies each and every allegation in paragraph 55 of the Complaint.

56.     *Unwanted Advances*, however, goes well beyond describing and criticizing Title IX processes.   Indeed, it needlessly devotes an entire chapter to Plaintiff, to whom Defendant KIPNIS assigns a thinly-disguised pseudonym.   That chapter contains wholly gratuitous private facts about Plaintiff's personal life-facts never before publicized, and facts that Plaintiff did not want publicized.   Among other things, KIPNIS wrote and Defendant HARPERCOLLINS PUBLISHERS LLC published:

i.      Facts concerning an alleged sexual relationship between Plaintiff and a married man who teaches at another academic institution, someone KIPNIS refers to in the book as "Professor X";

ii.     Personal details about Plaintiff's relationship with Ludlow never before made public;

iii.    Private text messages between Plaintiff and Ludlow, many of which were printed out of context and written about in a misleading manner; and

iv.     Excerpts from Northwestern University Title IX investigation records that the University must treat as confidential pursuant to federal law.

**ANSWER:**   HarperCollins respectfully refers the Court to the Book for its true content and meaning and admits that the Book devotes a chapter to Plaintiff, to whom Kipnis assigned a pseudonym, and references a sexual relationship between Plaintiff and a married man who

teaches at another academic institution, someone Kipnis refers to in the Book as "Professor X," details concerning Plaintiff's relationship with Ludlow, text messages between Plaintiff and Ludlow, and excerpts from the Northwestern University Title IX investigation. HarperCollins otherwise denies each and every remaining allegation in paragraph 56 of the Complaint, including subsections i-iv.

57.     It was highly offensive to Plaintiff, as it would be to any reasonable person, that Defendant LAURA KIPNIS included these facts in her book and that Defendant HARPERCOLLINS PUBLISHERS LLC publicized them.  These are intimate details of Plaintiff's personal life regarding some of the most personal and emotionally difficult experiences that Plaintiff has gone through.  Although some bits and pieces of the information in *Unwanted Advances* had trickled out through Ludlow's lawsuit, KIPNIS and HARPERCOLLINS included far more detail, including embarrassing and sensitive facts never previously in the public domain.

**ANSWER:**  HarperCollins denies each and every allegation in paragraph 57 of the Complaint.

58.     The facts that Defendant LAURA KIPNIS included about Plaintiff's private life are not matters of legitimate public concern.

**ANSWER:**  HarperCollins denies each and every allegation in paragraph 58 of the Complaint.

59.     In the book, Defendant LAURA KIPNIS also made false statements about Plaintiff, including misleading misrepresentations that placed her in a negative light.  For example, KIPNIS wrote and caused to be published and Defendant HARPERCOLLINS PUBLISHERS LLC published:

21

    i.        False statements about the nature of Plaintiff's personal and professional relationship with Ludlow, suggesting that it was a consensual dating relationship and that Ludlow was not in a position of evaluative authority with respect to Plaintiff;

    ii.       The false assertion that Plaintiff initiated six Title IX complaints, including that she initiated a Title IX complaint against "a fellow grad student";

    iii.      False statements that Plaintiff initiated two Title IX complaints against KIPNIS, as well as a Title IX complaint against KIPNIS's support person;

    iv.      False statements about the contents of Plaintiff's single Title IX complaint against KIPNIS; and

    v.       False statements throughout *Unwanted Advances* insinuating that Plaintiff is a liar who fabricated a false claim of rape against Ludlow to seek revenge against him.

    **ANSWER:**  HarperCollins denies each and every allegation in paragraph 59 of the Complaint, including subsections i-v.

    60.    Although Defendants HARPERCOLLINS PUBLISHERS LLC and LAURA KIPNIS claimed to seek to protect Plaintiff's identity by using a pseudonym, "Nola Hartley," it was obvious to many who Kipnis was writing about. Not only did KIPNIS use the real name of the Northwestern University professor at issue-Peter Ludlow-but she also published many details about Plaintiff's life, including her physical description, thus identifying her within her academic and professional communities.

    **ANSWER:**  HarperCollins admits that the Book uses the pseudonym Nola Hartley to describe Plaintiff and uses the real name of Peter Ludlow and includes details about Plaintiff's

life. HarperCollins otherwise denies each and every remaining allegation in paragraph 60 of the Complaint.

61. The false light in which Defendants LAURA KIPNIS and HARPERCOLLINS PUBLISHERS LLC placed Plaintiff was highly offensive to her, as it would be to any reasonable person. Defendants branded Plaintiff as a manipulative liar who mischaracterized her relationship with Professor Ludlow for revenge or other ulterior motives.

**ANSWER:** HarperCollins denies each and every allegation in paragraph 61 of the Complaint.

62. Defendant LAURA KIPNIS wrote *Unwanted Advances*, in part, to retaliate against Plaintiff for her filing of a Title IX complaint against her colleague Ludlow and for her subsequent complaint against KIPNIS.

**ANSWER:** HarperCollins denies each and every allegation in paragraph 62 of the Complaint.

63. Defendant LAURA KIPNIS knew that she was violating Plaintiff's privacy, but she did not care. Indeed, she gloated: "I mean, having been hauled up on complaints once, what do I have to lose? 'Confidentiality'? 'Conduct befitting a professor'? Kiss my ass."

**ANSWER:** HarperCollins admits that Kipnis wrote in the Book: "I mean, having been hauled up on complaints once, what do I have to lose? 'Confidentiality'? 'Conduct befitting a professor'? Kiss my ass." HarperCollins otherwise denies each and every remaining allegation in paragraph 63 of the Complaint.

23

**HarperCollins Publishes and Promotes the Book Without Adequate Investigation**

64.     Before publishing and publicizing the book, Defendants LAURA KIPNIS and

HARPERCOLLINS PUBLISHERS LLC did not adequately investigate the truthfulness of

KIPNIS's statements about Plaintiff.

**ANSWER:**   HarperCollins denies each and every allegation in paragraph 64 of the

Complaint.

65.     Defendant HARPERCOLLINS PUBLISHERS, LLC'S failure to adequately

investigate is particularly troubling given that the publishing company had reason to know that

Defendant LAURA KIPNIS had had a complaint filed against her by Plaintiff in the past and was

angry about being brought up on Title IX charges.  KIPNIS had a clear motive to retaliate.

Moreover, KIPNIS and Ludlow became friends in the course of Plaintiff's Title IX charges

against both of them, and KIPNIS was motivated to help Ludlow get back at Plaintiff and

provide an alternative theory about his own conduct.

**ANSWER:**   HarperCollins denies each and every allegation in paragraph 65 of the

Complaint.

66.     Neither Defendant LAURA KIPNIS nor anyone affiliated with Defendant

HARPERCOLLINS PUBLISHERS LLC ever bothered to reach out to Plaintiff to determine the

accuracy of the information about her contained in the book.  Nor did Defendants seek Plaintiff's

permission to publish highly personal, embarrassing, and damaging information about her.

Moreover, KIPNIS possessed information that contradicted Ludlow's version of events, but

chose not to publish that information because it did not fit with her narrative of Ludlow as

victim.

**ANSWER:** HarperCollins admits that Defendants did not ask Plaintiff to review the accuracy of the information about her contained in the Book or seek Plaintiff's permission to publish information about her in part because the matters were already in the public record and/or were matters of public concern. HarperCollins otherwise denies each and every remaining allegation in paragraph 66 of the Complaint.

67. Defendant LAURA KIPNIS claims that Professor Ludlow gave her access to his private text messages with Plaintiff. Neither KIPNIS nor Defendant HARPERCOLLINS PUBLISHERS LLC sought to determine whether these text messages were authentic, complete, or presented in context. Nor did Defendants seek Plaintiff's permission to publish her private text messages.

**ANSWER:** HarperCollins admits that Ludlow gave Kipnis access to his text messages with Plaintiff and that neither Kipnis nor HarperCollins sought Plaintiff's permission to publish the text messages between Plaintiff and Ludlow in part because the text messages already were publicly available online and in court records and were a matter of public interest. HarperCollins otherwise denies each and every remaining allegation in paragraph 67 of the Complaint.

**Publication and Promotion of *Unwanted Advances* Has Harmed and Will Continue to Harm Plaintiff**

68. Defendants' book received attention in many respected publications, including *Forbes*, *The Guardian*, *Huffington Post*, *Mother Jones*, *National Public Radio*, *National Review*, *The New York Times*, *The New Yorker*, *Oprah.com*, *Publishers Weekly*, and *The Wall Street Journal*.

**ANSWER:** HarperCollins admits the allegations in paragraph 68 of the Complaint.

69. Beyond the mainstream media attention, *Unwanted Advances* has predictably garnered close scrutiny from the relatively small world of academic philosophy.

**ANSWER:**  HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 69 of the Complaint, and on that basis denies each and every allegation therein.

70.     On social media and in various professional blogs, including blogs devoted to covering philosophy, many people-including prominent members of the academic philosophy community where Plaintiff hopes to soon work-have been dissecting *Unwanted Advances*, and publicly identifying Plaintiff by name.

**ANSWER:**  HarperCollins admits that the Book has been discussed on social media and in various professional blogs, including blogs devoted to covering philosophy.  HarperCollins otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 70 of the Complaint, and on that basis denies each and every remaining allegation therein.

71.     Some in Plaintiff's academic and professional community have opined online that, because of *Unwanted Advances*, Plaintiff will never get a job in her field.  Others outright threaten to blacklist her.  Indeed, because of the publication of *Unwanted Advances* and the firestorm of publicity and gossip that it has generated in her academic field, she has had to put off her entry into the academic job market by at least one and possibly two academic years.

**ANSWER:**  HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 71 of the Complaint, and on that basis denies each and every allegation therein.

72.     Although Plaintiff requested retractions from Defendants, no retractions have been made.

**ANSWER:**  HarperCollins admits the allegations in paragraph 72 of the Complaint.

73.     Further, Defendant LAURA KIPNIS has continued to make false statements about Plaintiff in press interviews about the book, despite receiving written notice from Plaintiff's counsel that the allegations about Plaintiff are false and should be retracted.

**ANSWER:**  HarperCollins denies each and every allegation in paragraph 73 of the Complaint.

## COUNT ONE
### (Public Disclosure of Private Facts)

74.     Paragraphs 1 through 73 of this Complaint are incorporated here.

**ANSWER:**  HarperCollins incorporates its responses to paragraphs 1 through 73 of the Complaint as if fully set forth herein.

75.     Defendants published and caused to be published facts concerning Plaintiff's private life.  Among the private details of Plaintiff's life that Defendants have made public include the Plaintiff's prior relationship with a married man who taught at a different academic institution; intimate details of Plaintiff's conversations with and relationship with Ludlow; and information contained in confidential University records stemming from the investigation of Plaintiff's sexual harassment and sexual assault complaint against Ludlow.

**ANSWER:**  HarperCollins respectfully refers the Court to the Book for its true content and meaning and admits that the Book provides certain details concerning Plaintiff's life, including (a) Plaintiff's prior relationship with a married man who taught at a different academic institution, which already was publicly known, (b) details of Plaintiff's conversations and relationship with Ludlow, which were publicly known, and (c) information contained in Northwestern University records relating to the investigation of Plaintiff's sexual harassment and sexual assault complaint against Ludlow.  HarperCollins otherwise denies each and every remaining allegation in paragraph 75 of the Complaint.

27

76.     The matters publicized were highly offensive to a reasonable person.

**ANSWER:**  HarperCollins denies each and every allegation in paragraph 76 of the Complaint.

77.     The matters publicized were not of legitimate public concern.  Indeed, Defendant LAURA KIPNIS acknowledges in her book that she is aware that universities treat sexual assault charges like those Plaintiff made against Ludlow as confidential.

**ANSWER:**  HarperCollins denies each and every allegation in paragraph 77 of the Complaint.

78.     As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including emotional distress and mental anguish, harm to reputation, harm to career, and harm to her education.

**ANSWER:**  HarperCollins denies each and every allegation in paragraph 78 of the Complaint.

## COUNT TWO
### (False Light Invasion of Privacy)

79.     Paragraphs 1 through 78 of this Complaint are incorporated here.

**ANSWER:**  HarperCollins incorporates its responses to paragraphs 1 through 78 of the Complaint as if fully set forth herein.

80.     Defendants' actions in falsely portraying Plaintiff as having lied about a sexual assault allegation, as having given and then retracted consent to sex with Ludlow, and as having filed multiple Title IX complaints, including a prior complaint against a fellow student, placed the Plaintiff in a false light before the public.

**ANSWER:**  HarperCollins denies each and every allegation in paragraph 80 of the Complaint.

81.     The false light in which Defendants' conduct placed Plaintiff would be highly offensive to a reasonable person.

**ANSWER:**   HarperCollins denies each and every allegation in paragraph 81 of the Complaint.

82.     Defendants acted with actual malice; that is, they acted with knowledge that their statements were false or with reckless disregard for whether the statements were true or false. Indeed, not only did Defendants fail to fact-check their sources, but Defendant LAURA KIPNIS knowingly omitted contrary evidence so that the information disclosed would fit her pre-determined narrative.  Defendant HARPERCOLLINS PUBLISHERS, LLC had reason to know that KIPNIS had a motive to retaliate against Plaintiff and that her allegations about Plaintiff needed to be carefully sourced.  Nonetheless, HARPERCOLLINS failed to check the allegations about Plaintiff for accuracy.

**ANSWER:**   HarperCollins denies each and every allegation in paragraph 82 of the Complaint.

83.     As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including emotional distress and mental anguish, harm to reputation, harm to career, and harm to her education.

**ANSWER:**   HarperCollins denies each and every allegation in paragraph 83 of the Complaint.

### COUNT THREE
### (Defamation)

84.     Paragraphs 1 through 83 of the Complaint are incorporated here.

**ANSWER:**   HarperCollins incorporates its responses to paragraphs 1 through 83 of the Complaint as if fully set forth herein.

85.     Defendants made false statements about the Plaintiff, as summarized by category in paragraph 59.  Even though the statements did not use Plaintiff's real name, others besides Plaintiff and Defendants reasonably understood that she was the person described as "Nola Hartley."

**ANSWER:**  HarperCollins lacks sufficient knowledge or information to form a belief as to the truth of the allegation that others besides Plaintiff and Defendants reasonably understood that Plaintiff was the person identified as "Nola Hartley," and on that basis denies that allegation. HarperCollins otherwise denies each and every remaining allegation in paragraph 85 of the Complaint.

86.     The statements were defamatory because they harmed Plaintiff's reputation by lowering her in the eyes of the community and deterring the community from associating with her.

**ANSWER:**   HarperCollins denies each and every allegation in paragraph 86 of the Complaint.

87.     The false statements were defamatory per se, because the harm to Plaintiff's reputation is obvious and apparent on its face.  As one example, the parts of *Unwanted Advances* that state and insinuate that Plaintiff manufactured a rape allegation against Ludlow-that she lied about something so important as a way to take revenge on him-are an allegation that Plaintiff engaged in illegal conduct.  Moreover, the allegation that Plaintiff filed multiple Title IX complaints including against a fellow student seeks wholly to undermine Plaintiff's reputation in the overall community, and more particularly in the small community of philosophy academia, where being a "serial Title IX filer" (as Defendant LAURA KIPNIS describes Plaintiff) who

makes up lies to harm professors is the kiss of death. These statements prejudice Plaintiff in her profession.

**ANSWER:** HarperCollins denies each and every allegation in paragraph 87 of the Complaint.

88. Defendants made an unprivileged publication of the statements to third parties.

**ANSWER:** HarperCollins denies each and every allegation in paragraph 88 of the Complaint.

89. As a result of Defendants' publication of false statements about Plaintiff, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including emotional distress and mental anguish, harm to reputation, harm to career, and harm to her education.

**ANSWER:** HarperCollins denies each and every allegation in paragraph 89 of the Complaint.

## COUNT FOUR
### (Intentional Infliction of Emotional Distress)

90. Paragraphs 1 through 89 of the Complaint are incorporated here.

**ANSWER:** HarperCollins incorporates its responses to paragraphs 1 through 89 of the Complaint as if fully set forth herein.

91. Defendants engaged in conduct that constitutes extreme and outrageous conduct. This was not a situation in which Defendants made just one or two false statements that incidentally affected Plaintiff. This was no minor insult or annoyance. Rather, Defendant LAURA KIPNIS wrote and Defendant HARPERCOLLINS PUBLISHERS LLC published an entire book that-page after page-exposes extremely private and painful parts of Plaintiff's life,

makes false statements about her conduct, brands her a vengeful liar, and turns this promising young graduate student's life upside down for the entire world to see.

**ANSWER:** HarperCollins denies each and every allegation in paragraph 91 of the Complaint.

92. Defendants knew that Plaintiff was peculiarly susceptible to emotional distress. Plaintiff had been through an awful experience, first with Ludlow, then with the entire Title IX debacle. The very fact that Plaintiff filed a Title IX complaint against Defendant LAURA KIPNIS in 2015, based on the harm Plaintiff experienced when KIPNIS first wrote publicly about Plaintiff in The Chronicle of Higher Education, was enough to put Defendants on notice that shining a spotlight on Plaintiff in this context had already and was continuing to harm her.

**ANSWER:** HarperCollins denies each and every allegation in paragraph 92 of the Complaint.

93. Making matters even worse, Defendants sought to and did promote the book widely, compounding the harm to Plaintiff. The wide reach of Defendants' smear campaign against Plaintiff, and its permanence (a published book, along with news articles, blogs, and other Internet commentary that will forever and inexorably remain available to all), contribute further to the extreme and outrageous nature of Defendants' conduct.

**ANSWER:** HarperCollins admits that Kipnis and HarperCollins sought to and did promote the Book widely. HarperCollins otherwise denies each and every remaining allegation in paragraph 93 of the Complaint.

94. Defendants engaged in this extreme and outrageous conduct knowing that there was a high probability, or with reckless disregard of the probability, of causing severe emotional distress to Plaintiff. Defendant LAURA KIPNIS harbored resentment against Plaintiff for

Plaintiff's filing of a Title IX complaint against KIPNIS. KIPNIS was frustrated and upset with what she described as her "Title IX Inquisition." She was blatant and unapologetic in *Unwanted Advances* about her lack of regard for the legal requirements of Title IX and whether breaching confidentiality and writing about Plaintiff was legally allowed and would cause harm. Moreover, neither KIPNIS nor HARPERCOLLINS PUBLISHERS LLC reached out at all to Plaintiff before proceeding with the book, either to check facts or to determine whether proceeding would harm Plaintiff.

**ANSWER:** HarperCollins admits that Defendants did not contact Plaintiff before publishing the Book. HarperCollins otherwise denies each and every remaining allegation in paragraph 94 of the Complaint.

95. Defendants' conduct caused severe emotional distress to Plaintiff. No reasonable person could be expected to endure being made the focal point of a campaign by a professor at her own University not only to discredit schools' Title IX policies and procedures, but also to discredit the student herself in her own academic community and far beyond. Plaintiff's emotional distress has been compounded by the fact that this was not a one-time, isolated incident, but rather the creation and publication of something that will endure forever, both as a book and in the many discussions of the book that are now on the Internet.

**ANSWER:** HarperCollins denies each and every allegation in paragraph 95 of the Complaint.

96. As a direct and proximate result of Defendants' conduct, Plaintiff was harmed and continues to be harmed in that she has experienced economic and non-economic damages, including severe emotional distress and mental anguish, harm to reputation, harm to career, and harm to her education.

**ANSWER:** HarperCollins denies each and every allegation in paragraph 96 of the Complaint.

WHEREFORE, Plaintiff requests judgment in her favor and against Defendants, as follows:

a.      Compensatory damages;

b.      Punitive damages;

c.      Attorney's fees, costs, and expenses;

d.      Prejudgment interest; and

e.      To grant further relief as this Court should find just and proper.

**ANSWER:** To the extent a response to the wherefore clause is required, HarperCollins denies each and every allegation contained therein and denies that Plaintiff is entitled to the relief she seeks, including in subsections a-e.

## AFFIRMATIVE DEFENSES

To the extent it is Plaintiff's burden to prove any of the issues raised in the affirmative defenses set forth below, HarperCollins hereby preserves, and does not waive, its legal position that Plaintiff maintains the burden of proof on those issues. Furthermore, Plaintiff thus far has failed to identify the specific statements she alleges are defamatory, opting instead to describe only categories of statements that are purportedly defamatory. To the extent that at a later date Plaintiff identifies the specific statements underlying her claims, HarperCollins reserves the right to revise the following defenses accordingly. HarperCollins also reserves its right to amend its Affirmative Defenses to allege further defenses that it may have against Plaintiff if additional defenses become apparent throughout the course of this litigation. Notwithstanding the foregoing and without waiving its right to assert additional affirmative defenses, HarperCollins

alleges the following Affirmative Defenses:

**First Defense**

**(Matter of Public Concern)**

1.    Plaintiff's claims fail, in whole or in part, because the sexual harassment and assault allegations against Ludlow and Northwestern University's Title IX investigations discussed in the Book are a matter of public concern.

2.    The Book examines the details of Plaintiff's relationship with and claims against Ludlow solely as a way to explore the legitimate public interest in the intersection of Title IX enforcement and sexual attitudes on university campuses and to foster necessary national conversation about the biases and due process failures in Title IX adjudications.  In the introduction to the Book, Kipnis explains that the Ludlow controversy is "a lens through which the excesses and hypocrisies of the current campus hysteria came into focus" and that "the story . . . should see the light of day exactly because this *isn't* just Ludlow's story."  Book at 31-33 (emphasis in original).  Reporting the true facts of and her opinions about Plaintiff's relationship with Ludlow was necessary to explain the basis of Kipnis's opinions about Title IX enforcement more broadly.

3.    Long before the Book was published, the allegations against Ludlow and Northwestern's handling of the matter already had received international media attention and had become part of an active public debate regarding sexual harassment and assault on university campuses.  Several publications, including *The Daily Beast* and *The Guardian of London,* published articles discussing the allegations against Ludlow and the broader implications of and lessons to be drawn from the controversy.  *See*, *e.g.*, ECF 25-1, Exs. 2-6.

## Second Defense

### (Prior Publication of Facts)

1.      Plaintiff's claims fail, in whole or in part, because all relevant facts were public at the time the Book was published.

2.      For example, the fact of Plaintiff's relationship with Professor X has been available in the public records of this Court since 2014.  Ludlow specifically alleged in his lawsuit against Plaintiff that Plaintiff "had a prior romantic and sexual relationship with another philosophy professor at a school which she had previously attended."  *Ludlow v. Nw. Univ.*, No. 1:14-cv-4614, Dkt. No. 1 ¶ 39 (N.D. Ill. June 18, 2014).

3.      Moreover, many details about Plaintiff's relationship with Ludlow and their text messages and conversations already had been made public in the pleadings in the lawsuit Ludlow filed against Plaintiff and Northwestern University.  For example, Ludlow alleged that "[d]uring their relationship, [Plaintiff] sent [Ludlow] emails and text messages in which she regularly told him that she loved him, was 'in love' with him, and missed him when he was away."  *Ludlow v. Nw. Univ.*, No. 1:14-cv-4614, Dkt. No. 47 ¶ 21 (N.D. Ill. Feb. 26, 2015).  Ludlow also discussed text messages from Plaintiff "the day after the alleged non-consensual encounter in which she told [Ludlow] that she loved him and in which she said nothing of an alleged incident of non-consensual sex."  *Id.* ¶ 26.

4.      The pleadings and decisions in the litigation brought by Ludlow also discussed material that Plaintiff now describes as "confidential" records of Northwestern's investigation. For example, in his complaint, Ludlow revealed that "[i]n her [Title IX] complaint, [Plaintiff] alleged that she and [Ludlow] had a consensual relationship two years prior during which she acknowledged they had had consensual sex" and that "[d]uring the investigation, [Plaintiff]

admitted that she continued her consensual romantic and sexual relationship with [Ludlow] after the alleged incident of non-consensual sex and even went on a vacation with him." *Ludlow v. Nw. Univ.*, No. 1:14-cv-4614, Dkt. No. 1 ¶ 32 (N.D. Ill. June 18, 2014).  A court decision also discusses information about Northwestern's investigation, noting, for example, that "Bobb did find that Ludlow violated Northwestern's policy against sexual harassment because he had unequal power in the relationship based on his purchase of expensive dinners for [Plaintiff] and the exercise of his 'charm.'" *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 787 (N.D. Ill. 2015).

### **Third Defense**

### (**Opinion**)

1.     Certain categories of statements identified as defamatory by Plaintiff are constitutionally protected statements of opinion that do not support a claim of defamation, including the purportedly (i) "[f]alse statements about the nature of Plaintiff's personal and professional relationship with Ludlow, suggesting that it was a consensual dating relationship and that Ludlow was not in a position of evaluative authority with respect to Plaintiff"; (ii) "[f]alse statements about the contents of Plaintiff's single Title IX complaint against KIPNIS"; and (iii) "[f]alse statements throughout *Unwanted Advances* insinuating that Plaintiff is a liar who fabricated a false claim of rape against Ludlow to seek revenge against him." *See* Compl. ¶ 59 i, iv, v.

2.     From the outset, the Book holds itself out to be a polemic, a paradigmatic form of opinion writing.  For example, the cover of the book is bright red with large font that reads: "If this is feminism, it's feminism hijacked by melodrama."  And the copy in the front flyleaf begins with: "Feminism is broken, argues Laura Kipnis. Anyone who thinks the sexual hysteria overtaking American campuses is a sign of gender progress is deranged."

3.      Throughout the Book, Kipnis sets forth her opinions about the current state of feminism and sex culture on university campuses and the flaws in the Title IX investigative process, and in support of her opinions on these issues of legitimate public concern also presents her opinions about the nature of the relationship between Plaintiff and Ludlow.  For example, Kipnis—after describing the text messages and emails she reviewed and documents from the Title IX investigation—presents the opinion that Plaintiff retroactively retracted her consent to the relationship and that "the idea that he'd raped her came later."  Book at 92-97.

### Fourth Defense

### (Truth)

1.      To the extent any of the allegedly defamatory categories of statements do not constitute statements of opinion, such statements are completely true, substantially true, and/or not substantially false.

2.      Any factual statement in the Book concerning Plaintiff's relationship with Ludlow, Plaintiff's allegations against Ludlow, and Northwestern University's Title IX investigation of Plaintiff's claims is supported by accurate documentary evidence, including, but not limited to: (i) text messages between Plaintiff and Ludlow, copies of which Ludlow provided to Kipnis; (ii) emails and social media messages between Plaintiff and Ludlow, copies of which Ludlow provided to Kipnis; (iii) publicly available pleadings, court decisions, and other records filed in the lawsuit brought by Ludlow against Plaintiff and Northwestern University; and (iv) records from Northwestern University's investigations of the various complaints filed by Plaintiff.

**Fifth Defense**

(**Fair Report Privilege**)

1.      Plaintiff's claims are barred in part because certain of the alleged defamatory statements are privileged pursuant to the fair report privilege.

2.      Throughout the Book, Kipnis provides statements and other information obtained from publicly available records filed in judicial proceedings, including in litigation brought by Ludlow in this Court and in the Title IX proceedings at Northwestern University.  In every instance, the Book provides accurate republications of these statements and/or republishes them verbatim.

**Sixth Defense**

(**Lack of Actual Malice**)

1.      Plaintiff's claims are barred, in whole or in part, because Defendants did not act with actual malice.  As described above, every factual statement concerning Plaintiff's relationship with Ludlow, Plaintiff's allegations against Ludlow, and Northwestern University's Title IX investigation of Plaintiff's claims is supported by accurate documentary evidence, including, but not limited to: (i) text messages between Plaintiff and Ludlow, copies of which Ludlow provided to Kipnis; (ii) emails and social media messages between Plaintiff and Ludlow, copies of which Ludlow provided to Kipnis; (iii) publicly available pleadings, court decisions, and other records filed in the lawsuit brought by Ludlow against Plaintiff and Northwestern University; and (iv) records from Northwestern University's investigations of the various complaints filed by Plaintiff.

2.      At no point did Defendants know or have any reason to know or believe that any of the documentary evidence and other information discussed in the Book was false.  In addition,

HarperCollins relied on a reputable author and had no reason to entertain doubts about the integrity of her work.

3.      In publishing the Book, HarperCollins followed its usual editorial procedures.

## Seventh Defense

## (Innocent Construction)

1.      Plaintiff's claims fail, in whole or in part, because certain of the purportedly defamatory statements are subject to innocent construction. For example, although Plaintiff alleges that the statement in the Book that Plaintiff filed six Title IX complaints gives rise to the defamatory implication that Plaintiff "makes up lies to harm professors" using the Title IX process, Compl. ¶ 87, this statement reasonably can be interpreted in an innocent manner: Plaintiff has stood up for herself and filed complaints rather than accept instances of sexual harassment, assault or discrimination.

## Eighth Defense

## (Punitive Damages – Lack of Malice)

1.      Exemplary or punitive damages are not recoverable because Defendants did not act with either common-law malice or constitutional malice.

## Ninth Defense

## (Punitive Damages – Constitutionality)

1.      Any claim for exemplary or punitive damages is barred by the First and Fourteenth Amendments to the Constitution of the United States.

WHEREFORE, Defendant HarperCollins Publishers LLC respectfully requests that the relief requested by Plaintiff in this case be denied, and that the Court enter any further relief that it deems just and proper under the circumstances.

Dated: March 28, 2018                    Respectfully submitted,


 */s/ Lauren J. Caisman*                      */s/ Katherine M. Bolger*

Brian A. Sher                            Katherine M. Bolger (*pro hac vice*)
Lauren J. Caisman                        DAVIS WRIGHT TREMAINE LLP
BRYAN CAVE LLP                           1251 Avenue of the Americas, 21st Floor
161 North Clark Street, Suite 4300       New York, NY 10020
Chicago, IL 60601                        Telephone: (212) 402-4068
Telephone: (312) 602-5000                Facsimile: (212) 379-5201
Facsimile: (312) 602-5050

                                         *Counsel for Defendants HarperCollins Publishers LLC
                                         and Laura Kipnis*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day March 2018, a true and correct copy of the above

and foregoing was sent via the Court's CM/ECF System to all counsel of record.

*/s/ Lauren J. Caisman*
*Attorney for Defendants*
